IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GREGORY ANDRE SMITH,

        Plaintiff,

  v.

A. HEDGPETH, et al.,

        Defendants.

No. C 13-01052 SBA (PR)

**ORDER OF SERVICE; DIRECTING FURTHER BRIEFING ON PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION; AND DENYING HIS MOTION FOR RECONSIDERATION**

## INTRODUCTION

Plaintiff, a state prisoner incarcerated at Salinas Valley State Prison ("SVSP"), filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983. Thereafter, he filed an amended complaint, which is the operative pleading before the Court and is the subject of this Order. Plaintiff also seeks a preliminary injunction to direct SVSP prison medical staff to refer him to a specialist for his medical issues. Dkt. 12.[1] Venue is proper because the events giving rise to the claim are alleged to have occurred at SVSP, which is located in this judicial district. See 28 U.S.C. § 1391(b).

In his amended complaint, Plaintiff names the following Defendants at SVSP: Warden Anthony Hedgpeth; Associate Warden L. Trexler; Correctional Sergeants R. Machuca, Jr. and M. Zornes; Physician Richard Mack; and Correctional Officers G. Bailey, H. Castillo, J. Ceja, J. Collier, R. Diaz, D. Dornan, V. Franco, G. Gudino, A. Machuca, M. Mejai, A. Miramontes, E. Montona, L. Ornealas, B. Powell, R. Reyes, M. Rodriguez, M. Roennmann, J. Sanudo, J. Spaulding, and J. Vinson. Plaintiff seeks injunctive relief and monetary damages.

---

[1] The Court granted Plaintiff's motion for leave to proceed in forma pauperis and denied his request for appointment of counsel in a separate Order. Dkt. 13.

**DISCUSSION**

## I.    Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  Id. § 1915A(b)(1), (2).  Pro se pleadings must be liberally construed.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

A supervisor may be liable under § 1983 upon a showing of personal involvement in the constitutional deprivation or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted).  A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor may be liable for implementing "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  Redman, 942 F.2d at 1446; see Jeffers v. Gomez, 267 F.3d 895, 917 (9th Cir. 2001).

## II.    Background

Plaintiff alleges that he suffers from certain mental health problems, including chronic depression and anti-social personality disorders, which prevent him from sharing a cell with another inmate.  He alleges that if he is forced to "double cell," "serious bodily injury or death would result."  (Am. Compl. at 5.)  Plaintiff requested single cell status and expressed

2

**United States District Court**
For the Northern District of California

1    his concerns to Defendant Trexler at an Institution Classification Committee ("ICC") hearing

2    held on March 3, 2011, but his request was denied.

3         On May 25, 2011, Plaintiff witnessed "wrongdoings" perpetrated against his neighbor,

4    inmate Tomas Meneweather, "pertaining to Defendants C/Os B. Powell and V. Franco

5    spraying pepper spray in Meneweather's cell." (Id. at 7.) In the course of investigating the

6    matter, Plaintiff was interviewed in June 2011 by Lieutenant G. R. Salazar. Shortly after the

7    interview, Plaintiff allegedly started to experience "stomach and chest discomfort" due to

8    "unknown substances placed in [his] food." (Id. at 8.) Inmate Meneweather also

9    experienced similar symptoms after eating his meals. Plaintiff claims that their food had

10   been contaminated by "rogue C/Os" in retaliation for their cooperation with the

11   investigation. (Id. at 8-9.) Specifically, Plaintiff asserts that from July 9, 2011 through

12   September 14, 2011, the following Defendants served him meals which made him ill:

13   Defendants Spaulding, Vinson, Montona, Mejai, Gudino, Reyes, Ceja, Rodriguez, Diaz,

14   Sanudo, A. Machuca, Castillo, Powell, Franco, Dornan, Miramontes, Bailey and Ornealas.

15        On August 23, 2011, Plaintiff complained to Defendant Mack about the contaminated

16   food and related illness. Plaintiff claims that Defendant Mack agreed to order blood and

17   urine samples to be taken from Plaintiff. On August 30, 2011, however, Defendant

18   Roennmann allegedly refused to allow a lab technician to take the blood and urine samples

19   from Plaintiff. (Id. at 10.)

20        In October of 2011, Defendant Collier approached Plaintiff about his "allegations of

21   being poisoned by his colleagues," and threatened him by saying that "if [Plaintiff] was smart

22   [he] would 'leave that poisoing [sic] shit alone or else [his] stay in [administrative

23   segregation] could get unpleasant.'" (Id. at 15.)

24        On January 20, 2012, Plaintiff was treated with antibiotics for the "h pylori" bacteria

25   which was later detected in his blood test results. (Id. at 11.)

26        In April 2012, Defendants Collier and Roennmann "informed Plaintiff that life is

27   going to get rough for Plaintiff for continuing to pursue an investigation into being

28   poisoned." (Id. at 16.)

3

United States District Court
For the Northern District of California

On April 15, 2012, Plaintiff claims that Defendant Collier refused to provide him with his dinner tray. After Plaintiff filed a complaint to Defendant Collier's superior, Defendants Collier and Roennmann allegedly began to "harass, intimidate and threaten[] Plaintiff by kicking on Plaintiff's cell door, taunting Plaintiff, [and] using foul disrespect[ful] language when speaking to Plaintiff." (Id.)

On April 29, 2012, Defendant Roennmann gave Plaintiff soiled and dirty laundry.

Plaintiff alleges that Defendant Collier again denied him his dinner tray on April 30, 2012 and August 3, 2012, in retaliation for filing complaints against Defendant Collier.

On August 6, 2012, Defendant Collier served Plaintiff a dinner tray with "chewing tobacco spit in [his] food." (Id. at 17.) Defendant Collier's alleged retaliatory actions of denying Plaintiff his dinner tray continued to take place in June and July 2013. Thus, Plaintiff claims he has lost between ten to fifteen pounds, due to lack of nutrients which has exacerbated [his] stomach medical conditions . . . ." (Id.)

On June 15, 2013, Plaintiff wrote a staff complaint relating to Defendant Collier's alleged retaliatory actions.

On July 27, 2013, Plaintiff was interviewed by SVSP Correctional Lieutenant D. Meredith about his June 15, 2013, staff complaint. (Am. Compl., Ex. N.) Thereafter, Plaintiff claims that Defendant Collier issued a Rules Violation Report ("RVR") for "writing the warden and cooperating with Lt. Meredith's investigation." (Am. Compl. at 18.)

## III.    Legal Claims

### A.    Deliberate Indifference Claim

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993). To establish a claim for an Eighth Amendment violation, a prisoner claiming that prison officials failed to attend to medical needs must establish both (1) a serious medical need and (2) deliberate indifference to that need by prison officials. See McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992). Inmates' mental health needs are among the medical needs covered by the Eighth Amendment. See Doty v. County of

4

United States District Court
For the Northern District of California

Lassen, 37 F.3d 540, 546 (9th Cir. 1994); see also Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982) (mental health care requirements analyzed as part of general health care requirements).

Liberally construed, the amended complaint alleges facts sufficient to state cognizable § 1983 claims for deliberate indifference to Plaintiff's mental health care needs and/or his safety as well as deliberate indifference to his alleged serious medical needs relating to his "serious stomach/intestinal problems," as explained below.

As to Defendant Mack, the allegations that he failed to provide adequate medical care to treat Plaintiff's "serious stomach/intestinal problems" present a cognizable Eighth Amendment claim.

As to Defendants Hedgpeth and Trexler, Plaintiff alleges that they ignored his need for mental health care and a single cell, and, instead, forced him to double-cell. Plaintiff alleges that Defendant Trexler allegedly knew of, but did nothing to help treat, Plaintiff's mental health concerns and allegedly denied his request for single cell status. It is not entirely clear whether the claims against Defendant Trexler should be construed as deliberate indifference to Plaintiff's mental health care needs or to his safety--or both. However, whether viewed as deliberate indifference to Plaintiff's need for mental health care or to be single-celled so that violence would not ensue, an Eighth Amendment deliberate indifference standard applies.

On the other hand, Plaintiff has not alleged facts sufficient to state a claim for supervisory liability against Defendant Hedgpeth. See Redman, 942 F.2d at 1446. As noted, a supervisor may be liable under § 1983 upon a showing of personal involvement in the constitutional deprivation or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Id. A factual basis for such a nexus has not been alleged. Therefore, Plaintiff's claims against Defendant Hedgpeth are DISMISSED without prejudice.

In sum, Plaintiff's amended complaint adequately links Defendants Trexler and Mack to his Eighth Amendment claims. Although these Defendants engaged in ostensibly

5

United States District Court
For the Northern District of California

unrelated actions, each allegedly engaged in conduct that prevented Plaintiff from receiving medical care and/or placed him in a situation where there was a serious risk of harm because of his unaddressed health care needs.

### B.    Claim Involving Contaminated Food

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation.  The more basic the need, the shorter the time it can be withheld.  See Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).  Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim.  See id. at 732-73.  The requisite state of mind to establish an Eighth Amendment violation depends on the nature of the claim.  In prison-conditions cases, the necessary state of mind is one of "deliberate indifference."  See, e.g., Farmer, 511 U.S. at 834 (inmate safety); Helling, 509 U.S. at 32-33 (inmate health); Estelle v. Gamble, 429 U.S. 97, 104 (1976) (inmate health).

Neither negligence nor gross negligence will constitute deliberate indifference.  See Farmer, 511 U.S. at 835-36 & n.4; see also Estelle, 429 U.S. at 106 (establishing that deliberate indifference requires more than negligence).  A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety.  See Farmer, 511 U.S. at 837.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  See id.  An Eighth Amendment claimant need not show, however, that a prison official acted or failed to

6

act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. See id. at 842. This is a question of fact. See Farmer, 511 U.S. at 842. A heightened pleading standard applies to the subjective prong of Eighth Amendment claims: the plaintiff must make nonconclusory allegations supporting an inference of unlawful intent. Alfrey v. United States, 276 F.3d 557, 567-68 (9th Cir. 2002) (applying standard to Bivens Eighth Amendment claim).

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimis injuries. See, e.g., Holloway v. Gunnell, 685 F.2d 150 (5th Cir. 1985) (no claim stated where prisoner forced to spend two days in hot dirty cell with no water); Evans v. Fogg, 466 F. Supp. 949, 950-51 (S.D.N.Y. 1979) (no claim stated by prisoner confined for twenty-four hours in refuse strewn cell and for two days in flooded cell). Federal courts instead should avoid enmeshing themselves in the minutiae of prison operations in the name of the Eighth Amendment. See Wright v. Rushen, 642 F.2d 1129, 1132 (9th Cir. 1981).

Here, Plaintiff alleges that the named Defendants (most of whom are identified as SVSP correctional officers) were responsible for serving him with his dinner tray from July 9, 2011 through September 14, 2011, and that he became ill each time he ate from his dinner tray. (Am. Compl. at 12-15.) Liberally construed, Plaintiff states a cognizable Eighth Amendment claim that Defendants Collier, Roennmann, Spaulding, Vinson, Montona, Mejai, Gudino, Reyes, Ceja, Rodriguez, Diaz, Sanudo, A. Machuca, Castillo, Powell, Franco, Dornan, Miramontes, Bailey and Ornealas acted with deliberate indifference to his health and safety needs.

Plaintiff also claims that Defendant Collier denied him his dinner tray on two occasions in 2012 -- April 30, 2012 and August 3, 2012 - and from June 2013 through July 2013. Liberally construed, Plaintiff states a cognizable Eighth Amendment claim that Defendant Collier acted with deliberate indifference to his health and safety needs.

**United States District Court**
For the Northern District of California

7

## C.     Retaliation

Plaintiff has alleged multiple claims of retaliation.  Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper.  Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977).  The plaintiff must show that the type of activity he was engaged in was protected by the First Amendment and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts.  Id. at 287.

Prisoners may not be retaliated against for exercising their right of access to the courts.  Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995).  The right of access to the courts extends to established prison grievance procedures.  Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001).  Thus, a prisoner may not be retaliated against for using such procedures.  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).

Here, Plaintiff first alleges that the contamination of food on his dinner trays from July 9, 2011 through September 14, 2011 was done in "retaliation for exercising his first [amendment] rights of freedom of speech . . . ."  (Am. Compl. at 20.)  Specifically, Plaintiff alleges that this action was taken by these "rogue C/Os" in retaliation for his cooperation with the investigation relating to the spraying of pepper spray in Meneweather's cell on May 25, 2011.  (Id. at 8-9.)

Second, Plaintiff alleges that Defendant Collier's actions of denying him his dinner tray on several occasions in 2012 and 2013 were in retaliation for filing complaints against Defendant Collier.  (Id. at 17.)  Plaintiff further claims that the RVR issued by Defendant Collier was issued after Plaintiff cooperated with Lt. Meredith's investigation relating to Defendant Collier's alleged retaliatory actions.  The Court notes that Plaintiff neither claims he was found guilty of any charge resulting from this RVR, nor that he was assessed any loss of good time credits or confined in the Secure Housing Unit ("SHU").  However, Plaintiff has alleged that Defendant Collier's threat of disciplinary action was an adverse action taken because of his right to free speech, i.e., a protected conduct.  Finally, Plaintiff claims that

8

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Defendant Roennmann retaliated against him by "interrupting and interfering with Plaintiff's medical care ordered by a doctor" on August 30, 2011, when Defendant Roennmann refused to allow a lab technician to take the blood and urine samples from Plaintiff. (Id. at 10.)

Liberally construed, Plaintiff's allegations state cognizable retaliation claims against Defendants Collier, Roennmann, Spaulding, Vinson, Montona, Mejai, Gudino, Reyes, Ceja, Rodriguez, Diaz, Sanudo, A. Machuca, Castillo, Powell, Franco, Dornan, Miramontes, Bailey and Ornealas.

### D.    Supervisory Liability

Plaintiff has sued Defendants R. Machuca and Zornes as the "supervisors" of the "rogue C/O's [responsible for] malicious actions" stemming from their retaliation for Plaintiff reporting that his food was being contaminated with unknown substances by these "rogue C/Os." (Am. Compl. at 20.)  It likewise appears that Plaintiff has named Defendant Hedgpeth, the SVSP Warden, on the grounds that he is responsible for operating the prison and should therefore be held liable for the alleged retaliatory actions of his subordinates.  If so, this is a "respondeat superior" claim; that is, he seeks to hold Defendants R. Machuca, Zornes and Hedgpeth liable as the superiors of the persons he contends violated his rights. This is, however, not a proper basis for imposing § 1983 liability.  See Taylor, 880 F.2d at 1045.  The supervisory liability claims against Defendants R. Machuca, Zornes and Hedgpeth are DISMISSED.

Equally without merit are Plaintiff's allegations that Defendants Hedgpeth and Trexler are liable as supervisors for the "wrongdoings" of their subordinates Defendants Powell and Franco relating to the May 25, 2011 incident.  Id. (no respondeat superior liability under § 1983).

As such, this claim against Defendants Hedgpeth and Trexler is also DISMISSED.

### E.    Harassment and Threats

Allegations of verbal harassment and abuse fail to state a claim cognizable under 42 U.S.C. § 1983.  See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997); Rutledge v. Arizona Bd. of Regents, 660 F.2d 1345, 1353 (9th Cir. 1981), aff'd sub nom. Kush v.

Rutledge, 460 U.S. 719 (1983); see, e.g., Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended 135 F.3d 1318 (9th Cir. 1998) (disrespectful and assaultive comments by prison guard not enough to implicate Eighth Amendment); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (directing vulgar language at prisoner does not state constitutional claim); Burton v. Livingston, 791 F.2d 97, 99 (8th Cir. 1986) ("mere words, without more, do not invade a federally protected right"). Allegations of mere threats also are not cognizable under § 1983. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong, nor do allegations that naked threat was for purpose of denying access to courts compel contrary result).

As mentioned above, Plaintiff claims that on April 15, 2012, Defendant Collier harassed and threatened him by taunting him and using foul disrespectful language when speaking to him. Based on the foregoing authority, the Court finds that Plaintiff's harassment claim against Defendant Collier is not cognizable. Plaintiff's conclusory allegation that Defendant Collier allegedly issued Plaintiff a RVR for cooperating with Lt. Meredith's investigation also does not rise to the level of a constitutional violation. In addition, there is no allegation by Plaintiff that he was assessed any loss of good time credits or confined in the SHU as a result of the RVR. Therefore, Plaintiff's claim of Defendant Collier's harassment and threats is DISMISSED.

## IV.    Request for a Preliminary Injunction

Plaintiff has filed a motion for a preliminary injunction. Specifically, he asks the Court to direct SVSP prison medical staff to refer him to a specialist for his medical problems.

To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief[.]" Winter, 555 U.S. at 22. The

10

United States District Court
For the Northern District of California

1  moving party bears the burden of meeting all prongs of the Winter test.  Alliance for the

2  Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).  The decision of whether to

3  grant or deny a preliminary injunction is a matter of the district court's discretion.  See Grand

4  Canyon Skywalk Devel., LLC v. 'Sa' Nyu Wa Inc., 715 F.3d 1196, 1200 n.1 (9th Cir. 2013).

5      A motion for a preliminary injunction cannot be decided until the parties to the action

6  are served.  See Zepeda v. INS, 753 F.2d 719, 727 (9th Cir. 1983).  In addition, immediate

7  injunctive relief may be granted without written or oral notice to the adverse party or that

8  party's attorney only if: (1) it clearly appears from specific facts shown by affidavit or by the

9  verified complaint that immediate and irreparable injury, loss or damage will result to the

10  applicant before the adverse party or the party's attorney can be heard in opposition, and

11  (2) the applicant's attorney certifies in writing the efforts, if any, which have been made to

12  give notice and the reasons supporting the claim that notice should not be required.  See Fed.

13  R. Civ. P. 65(b).

14      None of the Defendants has been served in this action.  In addition, Plaintiff has not

15  demonstrated that he will suffer immediate injury before Defendants are afforded an

16  opportunity to respond.  In light of these circumstances, the Court orders service of the

17  pleadings, as indicated below, and directs Defendants to respond to Plaintiff's request for a

18  preliminary injunction pursuant to the briefing schedule outlined below.

19  **V.    Motion for Reconsideration of Denial of Appointment of Counsel**

20      On March 31, 2014, the Court denied Plaintiff's motion for appointment of counsel

21  without prejudice.  Dkt. 13.  On June 2, 2014, Plaintiff filed a motion for reconsideration of

22  that ruling.  Dkt. 14.  In this District, a party must seek and obtain leave of court prior to

23  filing a motion for reconsideration.  Civ. L.R. 7-9.  Under Local Rule 7-9, the movant must

24  show a material change in fact or law or that a "manifest failure by the Court to consider

25  material facts or dispositive legal arguments which were presented to the Court before such

26  interlocutory order."  Id. 7-9(b).

27      Here, Plaintiff failed to comply with Local Rule 7-9, which, standing alone, is

28  sufficient to deny his motion.  Tri-Valley CARES v. U.S. Dept. of Energy, 671 F.3d 1113,

1131 (9th Cir. 2012) ("Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion."). Even if the motion for reconsideration is construed as a motion for leave to file a motion for reconsideration, Plaintiff fails to make the requisite showing under Local Rule 7-9. Moreover, Plaintiff's motion fails to demonstrate that the instant case involves "exceptional circumstances" warranting the appointment of counsel. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (reciting standard for the appointment of counsel). The motion for reconsideration is therefore DENIED.

**CONCLUSION**

For the foregoing reasons, the Court finds and orders as follows:

1.      Plaintiff's amended complaint states a cognizable § 1983 claim for deliberate indifference against Defendants Trexler and Mack.

2.      Plaintiff's deliberate indifference claims against Defendant Hedgpeth are DISMISSED without prejudice.

3.      Plaintiff states a cognizable Eighth Amendment claim that Defendants Collier, Roennmann, Spaulding, Vinson, Montona, Mejai, Gudino, Reyes, Ceja, Rodriguez, Diaz, Sanudo, A. Machuca, Castillo, Powell, Franco, Dornan, Miramontes, Bailey and Ornealas acted with deliberate indifference to his health and safety needs for allegedly serving him contaminated food from July 9, 2011 through September 14, 2011. Plaintiff also states a cognizable Eighth Amendment claim that Defendant Collier acted with deliberate indifference to his health and safety needs for allegedly denying him his dinner tray on two occasions in 2012 (April 30, 2012 and August 3, 2012) and from June 2013 through July 2013.

4.      Plaintiff states cognizable retaliation claims against Defendants Collier, Roennmann, Spaulding, Vinson, Montona, Mejai, Gudino, Reyes, Ceja, Rodriguez, Diaz, Sanudo, A. Machuca, Castillo, Powell, Franco, Dornan, Miramontes, Bailey and Ornealas.

5.      Plaintiff's supervisory liability claims against Defendants R. Machuca, Zornes and Hedgpeth are DISMISSED. Plaintiff's allegations that Defendants Hedgpeth and Trexler are liable as supervisors for the "wrongdoings" of their subordinates Defendants

12

Powell and Franco relating to the May 25, 2011 incident are also DISMISSED.

6.    Plaintiff's claim of Defendant Collier's harassment and threats is DISMISSED.

7.    The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the amended complaint and all attachments thereto (docket no. 10) and a copy of this Order to the following Defendants at SVSP: **Associate Warden L. Trexler; Physician Richard Mack; and Correctional Officers G. Bailey, H. Castillo, J. Ceja, J. Collier, R. Diaz, D. Dornan, V. Franco, G. Gudino, A. Machuca, M. Mejai, A. Miramontes, E. Montona, L. Ornealas, B. Powell, R. Reyes, M. Rodriguez, M. Roennmann, J. Sanudo, J. Spaulding, and J. Vinson.** The Clerk of the Court shall also mail a copy of the amended complaint and a copy of this Order to the State Attorney General's Office in San Francisco. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

8.    Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and amended complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

9.     Defendants shall answer the amended complaint in accordance with the Federal Rules of Civil Procedure.  The following briefing schedule shall govern dispositive motions in this action:

a.     No later than **sixty (60) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion.  The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue.  A motion for summary judgment also must be accompanied by a <u>Rand</u>[2] notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion.  <u>Woods v. Carey</u>, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in <u>Rand</u> must be served concurrently with motion for summary judgment).  A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice.  However, the Court notes that under the *new* law of the circuit, in the rare event that a failure to exhaust is clear on the face of the amended complaint, Defendants may move for dismissal under Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion.  <u>Albino v. Baca</u>, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (overruling <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), should be raised by a defendant as an unenumerated Rule 12(b) motion).  Otherwise if a failure to exhaust is *not* clear on the face of the complaint, Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56.  <u>Id.</u>  If undisputed evidence viewed in the light most favorable to Plaintiff shows a failure to exhaust, Defendant are entitled to summary judgment under Rule 56.  <u>Id.</u>  But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding.  <u>Id.</u> at 1168.

---

[2] <u>Rand v. Rowland</u>, 154 F.3d 952 (9th Cir. 1998).

14

If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

        b.     Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** after the date on which Defendants' motion is filed.

        c.     Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your amended complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. <u>Rand</u>, 154 F.3d at 962-63.

        Plaintiff also is advised that -- in the rare event that Defendants argue that the failure to exhaust is clear on the face of the amended complaint -- a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters;

United States District Court
For the Northern District of California

(2) authenticated documents -- documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your amended complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case. <u>Albino</u>, 747 F.3d at 1168.

(The notices above do not excuse Defendants' obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. <u>Woods</u>, 684 F.3d at 935.)

d.      Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

e.      The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

10.     The Court concludes that Plaintiff's request for a preliminary injunction should not be granted without affording Defendants notice and an opportunity to be heard. Accordingly, Defendants are hereby ORDERED to respond to Plaintiff's request for a preliminary injunction when they file their Answer to the amended complaint. In order to expedite the resolution of this case, the Court orders as follows:

a.      On the same date their Answer is due, Defendants shall respond to Plaintiff's request for a preliminary injunction (Dkt. 12). The response to the request for a preliminary injunction shall be supported by adequate factual documentation and shall conform in all respects to the Federal Rules of Civil Procedure, and all papers filed with the Court shall be promptly served on Plaintiff. Defendants are specifically directed to inform the Court of any plans to provide Plaintiff with a referral to a specialist for his medical problems.

b.      Plaintiff may file a reply within **twenty-eight (28) days** of the date

United States District Court
For the Northern District of California

1    Defendants' response is filed. Plaintiff's reply should be supported by factual documentation

2    and should demonstrate why Plaintiff satisfies the standard for assessing a request for a

3    preliminary injunction, which is set forth in <u>Winter</u>, and has been outlined above.

4         11.    Discovery may be taken in this action in accordance with the Federal Rules of

5    Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to

6    Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

7         12.    All communications by Plaintiff with the Court must be served on Defendants,

8    or Defendants' counsel once counsel has been designated, by mailing a true copy of the

9    document to Defendants or Defendants' counsel.

10        13.    It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the

11   Court informed of any change of address and must comply with the Court's orders in a

12   timely fashion. Failure to do so may result in the dismissal of this action for failure to

13   prosecute pursuant to Federal Rule of Civil Procedure 41(b).

14        14.    Extensions of time are not favored, though reasonable extensions will be

15   granted. Any motion for an extension of time must be filed no later than **fourteen (14) days**

16   prior to the deadline sought to be extended.

17        15.    Plaintiff's motion for reconsideration is DENIED. Dkt. 14

18        16.    This Order terminates Docket No. 14.

19        IT IS SO ORDERED.

20

21   DATED: July 8, 2014

22                                                SAUNDRA BROWN ARMSTRONG
                                                  United States District Judge
23

24

25

26

27

28